McIlvaine, J.
The original petition, in the Court of Common Pleas, prays for a judgment against the defendants, as deacons and trustees of the Old School Presbyterian Church of Greenfield, Ohio, an unincorporated religious society, for work and labor performed in the erection of a church edifice.
It is not claimed in the petition that there was such direct contract relation between the plaintiffs and defendants as would render the latter liable for the work performed by the former. Indeed, it clearly appears that the written contract, under which the work was performed, was entered into by and between the plaiutifls and a building committee composed of persons other than the defendants. The contract is set forth in the petition, and by its terms the members of the committee undertook the performance of their own engagements. Por the breach of this contract on the part of the committee, suit is brought, not against the ostensible contracting parties, but against the defendants, deacons and trustees of the church, who, as far as the contract itself shows, were strangers to it.
It is claimed, however, that the averments in the petition show that the defendants occupied the relation of principals to the building committee, and are, therefore, liable for' the contract of their agents.
The written contract shows that the committee acted in *169 a representative capacity, but it does not disclose the names of the persons represented. And although the members of the committee personally bound themselves for the performance of their engagements, it is conceded that the plaintiffs may pursue the principals, if discovered, for the breach of the contract on the part of their agents.
The main question, therefore, raised by the demurrer is, whether the averments in the petition disclose the principals for whom the committee acted; or, in other words, whether the facts in. the petition (well pleaded) show that the defendants were such principals ?
As we understand the petition, the averment is, that the Old School Presbyterian Church of Greenfield, Ohio, appointed the committee, and authorized it to act in the premises. The particular mode in which it was appointed is not stated. But the plain inference is that the appointment was made by the members of the church, or, at least, by some portion of the members. If the averment were that the appointment was made by or through the deacons, their liability would be fixed, but such is not the allegation. And we are at a loss to know how it appears that the deacons were principals to the committee, unless they were members of the church, and, as such, participated in the appointment, or in some way sanctioned the action of the church or ratified the action of the committee. But there is no averment that the deacons were members of the church, or that they participated in or sanctioned the appointment, or in any way ratified the contract which the committee made. If we were to assume that the defendants were members, because it is alleged that they were the deacons of the church, still their liability as principals would not follow, because a member of an unincorporated religious society can not be held personally responsible for the debts of the society, unless it be shown that he in some way sanctioned or acquiesced in their creation. Nor is the allegation that defendant Douglass afterward, as treasurer of said church, paid to *170 plaintiffs certain sums of money on account of said work, sufficient to show a ratification of said contract on his part.
It is claimed, however, that the defendants are liable because of their official relation to the church and its property.
It is alleged in the petition that by the.polity of said church the deacons are trustees of its property and effects, and have the management and control thereof.
That by the polity of such church its deacons may be constituted its agents for the management of its property, is undoubtedly true; and we construe the allegation that the deacons are the “trustees of its property and effects” to mean nothing more than that they are, ex officio, its general 'agents. Any other construction would show a vain effort to establish the law by averment, or to hold that the polity of such church was paramount to the law of the land. Property titles can not be transferred, nor personal or proprietary obligations imposed by such polity.
If, then, these defendants were only the agents of the society for the management and control of its property and effects, they do not, as matter of law, stand in the relation of principals to other agents appointed by the society to perform some particular duty in respect to its property, nor are they liable for any debt incurred for its improvement, except such as may have been made at their request, either express or implied.
Again, it is alleged “that by the polity and constitution of said Old School Presbyterian Church (the same being incorporated), the deacons are the financial and property agents and representatives of the church, and have and hold the property, and are bound for all the debts and obligations of said church properly contracted and authorized to be made by the church itself.”
It must be observed that the incorporated church here referred to is not the unincorporated church of Q-reenfield. No doubt, the general assembly of the Presbyterian Church of the United States is here intended; but we are at a loss to know whether the deacons referred to are the deacons of the incorporated or the unincorporated church. *171 If the former, then the averment has nothing whatever to do with this case; but if the latter, it does not change the legal effect of the pleading, for the following reasons:
1. The corporation (if there be one) is the creature of a foreigu state, and the right to enforce its polity, as a general rule, is limited to and within the territorial jurisdiction of the state that created it. Our courts will not even take judicial notice of its existence. If, by comity or otherwise, its powers or franchises, or any right claimed under them, become the foundation of an action in this state, they must be specially pleaded; and a pleading for that purpose, which does not disclose the name of the state by which, nor the terms in which, they were granted, must be held bad on demurrer.
2. But suppose there was no objection to the manner or substance of pleading this charter. As a rule of property or of personal obligation, it is of no force in this state. As matter of law, it was wholly inoperative to confer upon the deacons of the church at Greenfield the trust alleged in the petition, or to bind them for all the debts of the church. Such obligation, if it exist, must rest upon matter of contract, an express or implied assent on the part of the deacons to stand so bound. And the effect, as matter of evidence to prove such contract, which would be given to the circumstance of accepting such office with full knowledge of the terms of such charter and of the obligation imposed by such polity, we need not now consider, as no such case is made in the petition.
It is also claimed that the defendants are liable in this action, under the provisions of act of January 3, 1825 (S. & C. 805), entitled “an act securing to religious societies a perpetuity of title to lands and tenements conveyed in trust for meeting-houses, burying grounds, or residences for preachers.”
We deem it unnecessary to inquire as to the extent of obligation imposed upon trustees under this statute, as the case made in the petition does not bring the defendants within its provisions. This statute, by its terms, embraces *172 those cases only where lands and tenements have been conveyed, by devise, purchase, or otherwise, to some person or persons as trustee or trustees for the use of, etc. It does not appear that the property mentioned in this case had been so conveyed, and we are not authorized to presume such conveyance. Nor can we extend, by construction, the operation of this statute so as to embrace such a state.of facts as are presented in the petition.
It is also claimed that the judgment of reversal should not be disturbed for the reason that the Court of Common Pleas erred in rendering judgment for costs against the plaintiffs, after the demurrer to the petition was adjudged well taken, without granting leave to amend the petition. No leave was asked. If the plaintiff’s petition be adjudged insufficient upon demurrer, it is not error to proceed to final judgment against him. Leave to amend need not be granted in such case unless the party desiring it asks for such leave.
Judgment of District Court reversed, and judgment of Common Pleas affirmed.